Marcoux v. SSA                    CV-96-617-M    11/24/97

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Wilfred Marcoux

        v.                                    Civil No. 96-617-M

John J. Callahan,
Acting Commissioner,
Social Security Administration


**O R D E R**


        Wilfred Marcoux moves pursuant to 42 U.S.C.A. § 405(g) to

reverse the Commissioner's decision denying him disability

insurance benefits on grounds that the Commissioner's decision is

not supported by substantial evidence in the record.  The

Commissioner moves to affirm, and Marcoux objects.  For the

reasons that follow, the decision of the Commissioner is

affirmed.


**Background**[1]

        Wilfred Marcoux filed an application for social security

benefits on January 24, 1992, alleging a disability from work

since October 30, 1991, due to a heart attack, a back condition,

and pain in his back, neck, and shoulder.  He was also diagnosed

with a mental impairment in December 1994.  Mr. Marcoux has a

seventh grade education.  His past work experience includes jobs

as a press operator, assembler, maintenance, foundry worker, and

---

[1]The background facts are summarized from the parties'
"Joint Statement of Material Facts" with some amplification from
the record.

newspaper delivery.  At the time of the alleged onset of his disability in October 1991,  Mr. Marcoux was forty-four years old.

Mr. Marcoux suffered an acute heart attack on October 31, 1991.  By November 6, the cardiologist reported Mr. Marcoux's condition as stable, and he was discharged from the hospital on November 14.  He was advised to rest and not to work pending a cardiac catheterization procedure.  The catheterization procedure was performed on December 6 and showed that he had abnormal ventricular function with forty-five percent damage from his heart attack, but no valvular heart disease, no significant fixed coronary disease, and right coronary artery dominance.  He was discharged the same day without complications.  The cardiologist suggested a high level exercise test (stress test) and advised that he could return to full activities if the test was negative.

Mr. Marcoux was admitted to Franklin Regional Hospital with chest pains on December 22, 1991.  Testing performed at that time gave normal results, and he was discharged on December 24 with a diagnosis of atypical chest pain.  A stress test was administered on December 26.  Mr. Marcoux tolerated the test well, performing up to eighty-six percent of the predicted maximum exercise without chest pain although the test was discontinued after twelve minutes due to fatigue.  The doctors concluded that his exercise tolerance was good.

In February 1992, Marcoux was referred to the New Hampshire Heart Institute where he was diagnosed with organic heart disease

due to the injury from his prior heart attack.  The cardiologist found that Mr. Marcoux's test results were consistent with a prior heart attack.  Mr. Marcoux admitted smoking about a pack of cigarettes per day.  The doctor strongly recommended that he stop smoking entirely, as other doctors had advised, because smoking might precipitate coronary spasm, which was suspected to have been causally related to his heart attack.  The doctor later indicated that on-the-job stress also contributed to his heart problems.  On his follow-up visit in March, a different doctor at the Heart Institute found that Mr. Marcoux was in no acute distress and that his examination was unremarkable.  The doctor again reinforced the previous advice that he stop smoking.

Another cardiologist performed a consultative examination on February 25, 1993, for Disability Determination Services.  His examination showed no abnormal findings, and he concluded that Mr. Marcoux had no severe symptoms of congestive heart failure or angina.  The doctor concluded that Mr. Marcoux could sit and stand to a moderate degree, could do low-level walking, light lifting up to twenty pounds, and could carry objects thirty to forty feet.  Although he expressed concern about Mr. Marcoux's educational levels, the doctor thought that he could find employment.

In July 1994, Mr. Marcoux strained his back and was treated in the emergency room at Concord Hospital.[2]

_____

[2]Mr. Marcoux submitted an additional medical record pertaining to his back condition to the Appeals Council for review.  The new record is a radiology report dated January 22,

The Administrative Law Judge ("ALJ") ordered several consultative examinations. A cardiologist examined Mr. Marcoux in November 1994. His evaluation states that Mr. Marcoux described a "somewhat sedentary lifestyle with the most active efforts involving occasional cutting of wood using a chain saw." Mr. Marcoux also told the doctor that he experienced only rare episodes of chest pain and rarely used nitroglycerine. His physical examination was normal including normal strength and gait. The cardiovascular examination showed evidence of his prior heart attack injury and possible chronic obstructive pulmonary disease. The doctor concluded that Mr. Marcoux was doing "quite well" and recommended further testing.

Testing was performed in December 1994. The cardiologist then reported that test results were not significantly different from those in November 1991. Mr. Marcoux tolerated nine minutes of treadmill exercise on a standard protocol without chest pain, EKG changes, or significant functional aerobic impairment and

1996, from Concord Hospital that found "a moderate broad-based disc herniation at L3-4 resulting in moderate spinal stenosis . . . [and] a small central disc herniation at L4-5." Because the report postdates the covered period applicable to the ALJ's decision, it is not relevant to this review absent a retrospective diagnosis that would substantiate the same condition during the covered period. See, e.g., Likes v. Callahan, 112 F.3d 189, 190-91 (5th Cir. 1997); Evangelista v. Secretary of H.H.S., 826 F.2d 136, 140 (1st Cir. 1987). Since the new record is not relevant to the decision under review, it is unnecessary to decide whether materials submitted to the Appeals Council should be considered as part of the administrative record on appeal. Compare Eads v. Secretary of H.H.S., 983 F.2d 815, 817 (7th Cir. 1993) (records submitted to the Appeals Council not considered when Appeals Council denied review) with Perez v. Secretary of H.H.S., 77 F.3d 41, 45 (2d Cir. 1996) (new records considered and collecting cases).

stopped only because of leg cramping.  The cardiologist concluded, "Mr. Marcoux continues to demonstrate reasonable activity tolerance on objective tests performed."  The pulmonary functioning test indicated mild to moderate pulmonary obstructive disease.

In a letter dated August 1, 1994, Mr. Marcoux's treating physician, Dr. Coolidge, answered several questions the ALJ posed to him about Mr. Marcoux's condition.  He stated Mr. Marcoux's work capacity could be expected to be reduced by fatigue because of his cardiac injury.  In answer to a question about Mr. Marcoux's back strain, he said that there was not a structural back injury but that individuals with back strain may have recurrent difficulty resulting from overuse.  Dr. Coolidge described Mr. Marcoux as having a low tolerance level for frustration.  In his opinion, the combination of Mr. Marcoux's impairments made him "essentially unemployable" and "a poor candidate for occupational rehabilitation."

Dr. Robert Hlasny performed a consultative psychological examination on November 29, 1994.  He determined that Mr. Marcoux's intellectual functioning was in the low average range.  He diagnosed a personality disorder with a global assessment functioning ("GAF") score of 65 that indicates some mild symptoms in social or occupational functioning but that the subject is generally functioning pretty well.  Dr. Hlasny also found that Mr. Marcoux had a good capacity for making occupational adjustments.

The administrative hearing was held on July 6, 1994.[3]  Mr. Marcoux was represented by an attorney.  Mr. Marcoux testified about his previous work experience and his physical condition. He described his heart attack and subsequent heart condition.  He also explained that he had arthritis in his shoulders and neck and a deteriorating back condition that caused occasional episodes of back strain.  He said that he continued to smoke despite advice from his doctors to stop and that he had stopped seeing his treating doctor, Dr. Coolidge, because of his conclusion that Mr. Marcoux's medical concerns were caused by smoking and his age and that he would have to "deal with it." Mr. Marcoux said that Dr. Coolidge had told him that he was not sure whether he would be able to maintain employment but that he should first find employment.  He explained that he had been trying without success to find a job.

Mr. Marcoux described his daily activities to include getting up and dressed, some household tasks, food shopping, and napping during the day because of fatigue.  When asked by the ALJ, Mr. Marcoux explained his activities of the day before the hearing as follows: he got up; picked up the house; went into "the city" to work to pay off a debt by doing weedwhacking; came home and napped until evening; ate; and watched television.  He said that he experienced some difficulty sitting, standing,

_____

[3]Because the parties' "Joint Statement of Material Facts" does not include the hearing, the background facts are taken from the transcript.

walking, and lifting, but that he could lift twenty-five to thirty pounds.

A vocational expert testified at the hearing. The ALJ described a hypothetical worker with a predominantly unskilled and semiskilled work background, limited education, and a residual functional capacity for light work, including sedentary, but limited to no overhead reaching, a low stress environment, and avoiding exposure to cold or damp weather. The vocational expert proposed jobs as a business (not postal) mail clerk, a shipping and receiving clerk, a janitor or cleaner, or an assembly position. When the ALJ added a requirement for a sit or stand option, the vocational expert found that only the assembly position would qualify, and when he added a memory deficit, the vocational expert indicated that none of the jobs would be available. She said that a further exertional limitation would preclude all of the jobs except the sedentary assembly position. In response to Mr. Marcoux's attorney's question, the vocational expert testified that a need to take naps that could not fit into normally scheduled breaks would eliminate all of the job possibilities. The ALJ asked the vocational expert about security guard jobs, and she answered that although Mr. Marcoux's abilities would fit the job descriptions, she did not have the job availability information with her.

A supplemental hearing was held on April 3, 1995, when Mr. Marcoux was again represented by his attorney. A different vocational expert attended the hearing but did not testify

7

because the ALJ decided that his prior hypothetical questions were still appropriate. Mr. Marcoux testified about vehicles that he kept in his yard and about his occasional activity of towing wrecked cars to a crusher to earn money to pay his bills. He generally got help with the lifting involved in hitching and unhitching the cars. The ALJ discussed a report he had received that Mr. Marcoux was working collecting trash from apartment buildings, which Mr. Marcoux denied. Mr. Marcoux described helping a friend on one occasion haul trash from city water grates.

Mr. Marcoux testified that he had had problems with his back since the last hearing and that Dr. Coolidge had prescribed muscle relaxants and Ibuprofen. He also had Darvocet for pain but rarely needed to take it. He said that he had taken nitroglycerin the week before the hearing, but had not received any further treatment for his heart condition.

The ALJ issued her decision on July 24, 1995. She found Mr. Marcoux to be a younger individual within the meaning of the social security regulations, with a seventh grade education, whose ability to perform a full range of light work was limited as described in the hypothetical. She found that his descriptions of his pain and further physical and mental limitations were not credible, and determined that he was able to perform all of the jobs described by the vocational expert. On that basis, she decided that he was not disabled. The Appeals

Council denied review in November 1996, and appeal to this court followed.

## Standard of Review

After a final determination by the Commissioner and upon request by a party, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g). The Commissioner's factual findings are conclusive if supported by substantial evidence. Id.; Irlanda-Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); see also Rodriguez Pagan v. Secretary of H.H.S., 819 F.2d 1, 3 (1st Cir.1987).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence. Ortiz, 955 F.2d at 769; Burgos Lopez v. Secretary of H.H.S., 747 F.2d 37, 40 (1st Cir. 1984). The court will defer to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. Frustaglia v. Secretary of H.H.S., 829 F.2d 192, 195 (1st Cir. 1987). Accordingly, the

9

Commissioner's decision to deny benefits will be affirmed unless it is based on a legal or factual error. Manso-Pizarro v. Secretary of H.H.S., 76 F.3d 15, 16 (1st Cir. 1996).

## Discussion

On appeal, Mr. Marcoux challenges the ALJ's determination, made at the fifth step of the sequential analysis, that he was not disabled during the relevant period.[4] At the fifth step, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, he retains the residual functional capacity to do work other than his prior work, and that work the claimant can do exists in significant numbers in the national and regional economies. 20 C.F.R. § 404.1520(f); Keating v. Secretary of H.H.S., 848 F.2d 271, 276 (1st Cir. 1988). Mr. Marcoux argues that the ALJ failed to properly consider the combined effects of his impairments including his complaints of pain and failed to give proper weight to Dr. Coolidge's opinion that he was unable to work.

------

[4] The ALJ is required to consider the following five steps when determining if a claimant is disabled:
  (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
  (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
  (3) whether the impairment meets or equals a listed impairment;
  (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
  (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1995).

10

## A.    Effect of Impairments in Combination

Mr. Marcoux contends that the ALJ ignored his complaints of back pain in combination with his other impairments, and failed to consider the effects of fatigue on his ability to work.  See 20 C.F.R. § 404.1523.  The ALJ found that Mr. Marcoux had severe impairments caused by his heart condition, obstructive pulmonary disease, and a personality disorder that would limit his basic work activities.  Based on those limitations, she found that his exertional level was restricted to light work with further limitations precluding overhead reaching, stress, and exposure to cold or damp conditions.

Although the ALJ found that Mr. Marcoux's subjective complaints of disabling limitations were not credible, she made no specific findings with respect to Mr. Marcoux's complaints of back pain or fatigue.  It would be better practice, and the ALJ's decision would be entitled to more weight, if she had made specific findings.  See Frustaglia, 829 F.2d at 195.  However, in the circumstances peculiar to this case, substantial evidence in the record supports her implicit determination not to credit Mr. Marcoux's complaints of disabling fatigue and back pain.

"[C]omplaints of pain need not be precisely corroborated by medical findings, but they must be consistent with medical findings."  Dupuis v. Secretary of H.H.S., 869 F.2d 622, 623 (1st Cir. 1989).  When allegations of disabling pain are not supported by objective medical evidence, the ALJ must consider evidence of the claimant's daily activities, medications and treatments for

11

pain, functional restrictions, frequency and duration of pain, and precipitating and aggravating factors. Avery v. Secretary of H.H.S., 797 F.2d 19, 23 (1st Cir. 1986)). Gaps in medical records are also evidence. Irlanda Ortiz, 955 F.2d 765, 769 (1st Cir. 1991).

1. Fatigue

At the first hearing, in July 1994, Mr. Marcoux testified that he would take two to three hour naps following several hours of physical activity. When he testified at the second hearing, approximately nine months later, he said that although he still had fatigue "from time to time," he was improving. Thus, Mr. Marcoux's subjective view of his condition suggests that fatigue was not debilitating by early 1995.

In addition, the medical records do not support Mr. Marcoux's complaints of extreme fatigue in July 1994. Dr. Benson, who specialized in cardiovascular disease and examined Mr. Marcoux in February 1993, found that he had no severe symptoms caused by heart failure or angina. He found no physical impairment that would preclude Mr. Marcoux from employment with some limitation in exertional requirements.

In a letter dated August 1, 1994, Dr. Coolidge reviewed Mr. Marcoux's impairments and gave his opinion as to their severity in response to questions from the ALJ. He considered Mr. Marcoux's stated need to take two to three hour naps following physical activity. He said that the reduction in Mr. Marcoux's

12

heart capacity could limit his maximum work capacity but doubted the need for long naps.

Mr. Marcoux's cardiologist noted in a letter to the Social Security Disability Claims manager in November 1994 that "Mr. Marcoux is rather evasive on questioning concerning his cardiovascular status." He reported that Mr. Marcoux described a sedentary lifestyle but that he had no difficulty occasionally cutting wood with a chain saw. In a letter dated December 27, 1994, the cardiologist stated that Mr. Marcoux "continues to demonstrate reasonable activity tolerance on objective tests performed."

Mr. Marcoux's treating and examining doctors all warned him to stop smoking and opined that his heavy smoking contributed to his symptoms. Although he was seen by doctors for testing and consultation examinations after December 1991, there appear to be no medical records for treatment of fatigue, heart, or pulmonary symptoms during the period.

### 2. Back Pain

The medical record of Mr. Marcoux's treatment at Concord Hospital for a back strain in July 1994 is apparently the only medical evidence in the administrative record, for the applicable period, that pertains to treatment for a back problem. Mr. Marcoux testified that the strain resolved after several days of bed rest. Dr. Coolidge's letter dated August 1, 1994, responding to Mr. Marcoux's attorney's questions about his back pain,

13

answered that he had had a back strain episode but did not have a "structural injury to his back." Dr. Coolidge noted that some individuals with strain may experience difficulties later caused by overuse which might require reduction in work activities. He did not indicate that he had any information that Mr. Marcoux was then experiencing any of the potential difficulties that he described.

At the first hearing, Mr. Marcoux described continual back pain, but his descriptions, at both hearings, of his activities and functioning do not support a conclusion that he was disabled by his impairments. He testified that he occasionally did work such as weedwhacking to pay off a debt, that he occasionally towed vehicles from his brother's garage near Boston to a crusher in Manchester to make money, that he had hauled trash for a friend who was cleaning city water grates, and that he could lift twenty-five to thirty pounds. Although he mentioned that those activities might tire him, he did not indicate that back pain hindered his activity level. At the second hearing, he said that although Dr. Coolidge had recently prescribed Darvocet for his back pain, he had not needed to take it often. The record and Mr. Marcoux's description of his back condition suggested that he had experienced episodes of back pain, when his back "went out," but that he was able to function well at other times.

Thus, neither the objective medical evidence nor Mr. Marcoux's descriptions of his activities, medications, treatments, and functioning support his complaints of disabling

14

fatigue or back pain. Because the ALJ's implicit decision not to credit his subjective complaints of disabling fatigue and back pain is amply supported in the record, the ALJ did not err in excluding those subjective complaints. Thus the ALJ properly considered the combined effect of only the impairments that she found to be credible.

B.    **Treating Doctor's Opinion**

Mr. Marcoux also contends that the ALJ's determination was erroneous because she did not give appropriate weight to Dr. Coolidge's opinion that he was disabled by the combination of his impairments. A treating doctor's opinion "of the nature and severity of [a claimant's] impairments [that] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" will be given controlling weight. 20 C.F.R. § 404.1527(d)(2). However, whether or not a claimant is disabled for purposes of determining eligibility for social security benefits is a determination that is reserved to the Commissioner. §404.1527(e). Thus, the ALJ appropriately considered Dr. Coolidge's opinion of the severity of Mr. Marcoux's impairments, but was not obligated to accept Dr. Coolidge's opinion that the combination of Mr. Marcoux's physical and mental impairments made him "essentially unemployable."

## Conclusion

For the foregoing reasons, the claimant's motion (document no. 4) to reverse the decision of the Commissioner is denied, and the Commissioner's motion to affirm (document no. 6) is granted. The clerk of court is directed to close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 24, 1997

cc:  Stanley H. Robinson, Esq.
     David L. Broderick, Esq.